UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN WISHNIA, | ) |
| Plaintiff, | ) |
| | ) No. 18 C 4333 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| SIGNATURE BANK, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

After Ronald Spielman and his co-borrowers defaulted on their obligations under a loan agreement with Defendant Signature Bank ("Signature"), Signature applied the funds in Spielman's IRA, held at Signature, to the outstanding obligations. Spielman maintains that Signature did not have the right to use the IRA to setoff the outstanding obligations. Plaintiff Steven Wishnia, who purchased an assignment of Spielman's claims against Signature arising from the allegedly improper setoff, has filed a third amended complaint ("TAC") against Signature, asserting claims for breach of contract, breach of fiduciary duty, conversion, and promissory estoppel. Signature moves to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6). But because Wishnia has sufficiently alleged the elements of each claim, with Signature's arguments for dismissal more appropriate for consideration after discovery and on a more fully-developed record, the Court denies Signature's motion and allows the TAC to proceed.

# BACKGROUND[1]

Ronald Spielman was the president and owner of Sound Solutions Windows & Doors, LLC ("Sound Solutions"), Armaclad Doors & Windows, LLC ("Armaclad"), and Chicago Lead Safe Windows and Doors, LLC ("Chicago Lead"). In November 2008, Sound Solutions and Armaclad entered into a Loan and Security Agreement (the "Loan Agreement") with Signature. In § 5 of the Loan Agreement, Sound Solutions and Armaclad granted security interests to Signature in certain property, with the Loan Agreement defining "Collateral" as that property described in § 5, "together with all other real or personal property of any Obligor or any other Person now or hereafter pledged to Lender to secure, either directly or indirectly, repayment of any of the Obligations." Doc. 38-2 at 39. The Loan Agreement specified what constituted an Event of Default and provided various actions Signature could take upon the declaration of such an Event of Default. Among other things, it provided:

> Upon the occurrence and during the continuation of an Event of Default, Lender is hereby authorized, without notice or demand and without affecting the liability of a Borrower hereunder, to, at any time and from time to time, (i) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to, a Borrower's Obligations or otherwise modify, amend or change the terms of any promissory note or other agreement, document or instrument now or hereafter executed by a Borrower and delivered to Lender; . . . (iii) take and hold security or collateral for the payment of a Borrower's Obligations hereunder or for the payment of any guaranties of a Borrower's Obligations or other liabilities of a Borrower and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale thereof as Lender, in its sole discretion, may determine; and (v) settle, release,

---

[1] The facts in the background section are taken from Wishnia's TAC and exhibits attached thereto and are presumed true for the purpose of resolving Signature's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.*

2

> compromise, collect or otherwise liquidate a Borrower's
> Obligations and any security or collateral therefor in any manner,
> without affecting or impairing the obligations of the other
> Borrowers.

*Id.* § 18(d). As Borrowers, Sound Solutions and Armaclad agreed that

> [e]ach Borrower hereby waives the benefit of any law that would
> otherwise restrict or limit Lender or any affiliate of Lender in the
> exercise of its right, which is hereby acknowledged and agreed to,
> to set-off against the Obligations, without notice at any time
> hereafter, any indebtedness, matured or unmatured, owing by
> Lender or such affiliate of Lender to such Borrower, including,
> without limitation any deposit account at Lender or such affiliate.

*Id.* § 28(c). The Loan Agreement further provided that it and the Other Agreements "may not be modified, altered or amended except by an agreement in writing signed by each Borrower or such other Person who is a party to such Other Agreement and Lender."[2] *Id.* § 22.

In July 2009, the parties entered into a First Amendment to the Loan Agreement, adding Chicago Lead as a Borrower. In July 2010, Sound Solutions, Armaclad, Chicago Lead, and Spielman entered into a Second Amendment and Waiver to the Loan Agreement, adding Spielman as a Borrower. The Second Amendment provided that certain sections of the Loan Agreement, specifically § 5, 6, 8, 9 (other than 9(f)), 11 (except for 11(g) and 11(m)), 12, 13, and 14, did not apply to Spielman. Among other things, this excluded Spielman from the grant of security interests to Signature as provided in § 5 of the Loan Agreement. The parties also entered into several additional amendments to the Loan Agreement, due in part to Sound Solutions' declining financial condition and Signature's resulting demands for additional funds

---

[2] The Loan Agreement defined Other Agreements as "all agreements, instruments and documents, other than this Agreement, including, without limitation, guaranties, mortgages, trust deeds, pledges, powers of attorney, consents, assignments, contracts, notices, security agreements, leases, financing statements, subordination agreements, and all other writings heretofore, now or from time to time hereafter executed by or on behalf of a Borrower or any other Person and delivered to Lender or to any parent, affiliate or subsidiary of Lender in connection with the Obligations or the transactions contemplated hereby, as each of the same may be amended, modified or supplemented from time to time." Doc. 38-2 at 45.

to avoid a formal declaration of default. For example, Spielman and his companies assigned several life insurance policies to Signature, including one on his mother's life. After her death in January 2012, Signature received the death benefit on that policy of $2.7 million and applied it to the loan balance.

Spielman's mother also had an IRA at High Tower Securities, which had a balance of approximately $1.5 million and named Spielman as the designated beneficiary. Spielman inherited the IRA upon her death. In reviewing Spielman's personal financial statements, Signature learned of the inherited High Tower IRA. In February or March 2013, Signature requested that Spielman meet with Michael O'Rourke, its president and CEO, and Peter Olsen, its Senior Vice President responsible for administering the Sound Solutions loan. O'Rourke and Olsen expressed Signature's request that Spielman transfer the High Tower IRA to a new IRA at Signature "as a sign of 'good faith' and to increase Signature Bank's overall asset base and lending capacity." Doc. 38 ¶ 20. O'Rourke, Olsen, and Spielman reached a verbal agreement for Spielman to transfer the IRA to Signature, which Signature would treat as an inherited IRA and from which Signature would not seek recourse to offset or reduce the debt under the Loan Agreement. After consulting with counsel, Spielman asked Signature for a letter confirming that Signature would not treat the IRA as security or subject it to attachment or setoff. Olsen drafted a letter on March 8, 2013, which Spielman's counsel revised. Olsen sent Spielman an executed letter (the "Confirmation Letter"), dated March 8 but sent on March 14. The Confirmation Letter identified the IRA in the subject line and stated:

> Please accept this letter as confirmation that the subject account is expressly excluded from the security interest granted by that certain Loan and Security Agreement dated as of November 28, 2008 between Signature Bank, Sound Solutions Windows & Doors, LLC and Armaclad Windows & Doors, LLC, as such agreement has been or may be amended, and does not constitute

> "Collateral" as that term is defined in such agreement or as security for any other obligations owed by Sound Solutions Windows & Doors, LLC, Armaclad Windows & Doors, LLC, Chicago Lead Safe Window Services, LLC and/or Ronald Spielman to Signature Bank. In addition, Signature Bank hereby waives any rights of offset it may have against the subject account under applicable law or otherwise.

Doc. 38-8. Spielman signed the Confirmation Letter and sent it back to Olsen. He thereafter liquidated the securities in the High Tower IRA and wired the funds to Signature for deposit into a rollover IRA in his name. Signature created this account on March 15, 2013, and had Spielman complete a traditional IRA application. The application listed Signature as the custodian/trustee and specified that Spielman received a copy of IRS Form 5305 or 5305-A, by which Spielman agreed to be bound. These IRS forms provide, among other things, that the depositor's interest in the account is nonforfeitable. After moving the IRA to Signature, Spielman occasionally authorized withdrawals from that account to Sound Solutions' or other accounts held at Signature.

On January 22, 2014, Signature issued a formal notice of default under the Loan Agreement after Sound Solutions' business rapidly declined. Signature continued to allow Sound Solutions to operate under certain restrictions, including the retention of a turnaround management consultant and stringent reporting requirements. Sound Solutions' business continued to decline, however, causing Signature to issue another formal notice of default on April 23, 2014. In June, Signature stopped all funding to Sound Solutions and began exercising its rights to liquidate Sound Solutions' collateral. Sound Solutions ceased active business operations the same month.

In early August, Spielman spoke with Olsen and requested that Signature transfer $50,000 from the IRA to his personal account. Several days later, Olsen contacted Spielman to demand that Spielman consent to the transfer of $200,000 from the IRA to the outstanding

balance under the Loan Agreement. Spielman refused and sent an email on August 5 demanding that Signature transfer all of the funds in the IRA to his wife's personal checking account. Signature did not respond and did not transfer the funds to his wife's account. Instead, that same day, Signature applied the remaining funds in the IRA account, approximately $428,000, to the balance under the Loan Agreement. On August 8, Spielman sent an email to O'Rourke, Olsen, and Bryan Duncan, Signature's Executive Vice President, indicating that the August 5, 2014 setoff breached Signature's contractual obligations and demanding that Signature reverse the setoff. Spielman's lawyer sent a similar demand to Duncan on August 21, 2014. Signature has failed to refund the $428,000 to Spielman.

On March 30, 2018, Wishnia entered into an assignment agreement with Spielman, by which he purchased an assignment of all claims and causes of action Spielman has against Signature arising from the August 5, 2014 setoff. This case followed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Breach of Contract (Count I)

In his claim for breach of contract, Wishnia alleges that Signature breached its agreement in the Confirmation Letter not to use the IRA to setoff any obligation owed by Spielman or his companies under the Loan Agreement. Signature argues that this claim fails for several reasons: (1) the Confirmation Letter did not legally modify the Loan Agreement; (2) to the extent the Confirmation Letter did modify the Loan Agreement, Illinois law bars the claim; and (3) to the extent the Confirmation Letter constitutes a separate contract, it did not prevent Signature from exercising its rights under the Loan Agreement to change the terms of any other agreement and use the IRA to setoff the outstanding obligations under the Loan Agreement. The Court addresses these arguments in turn.

#### A. Modification

First, the Court must determine whether to treat the Confirmation Letter as a separate contract between Signature and Spielman or a modification of the Loan Agreement. Illinois law treats a modification as "a change in one or more respects which introduces new elements into the details of the contract, or cancels some of them, but leaves the general purpose and effect undisturbed." *Urban Sites of Chicago, LLC v. Crown Castle USA*, 979 N.E.2d 480, 492, 2012 IL App (1st) 111880, 365 Ill. Dec. 876 (2012). Although the Confirmation Letter did not take the same form as the executed amendments to the Loan Agreement, it served the same purpose as those amendments: to change certain terms of the Loan Agreement with respect to how Signature would treat the IRA when placed under its control while leaving the general purpose and effect

7

of the Loan Agreement undisturbed. The Confirmation Letter specified that Signature did not have a security interest in the IRA, the IRA did not constitute Collateral as defined by the Loan Agreement, and Signature waived any right to offset it might have under applicable law or otherwise, such as that provided by the Loan Agreement. Although the Second Amendment already provided that Signature's security interest in Collateral, as defined in the Loan Agreement, did not extend to Spielman, the Second Amendment did not affect Signature's ability to execute against other collateral held by Spielman in the case of an Event of Default or its right to setoff against Spielman's accounts.[3] The Confirmation Letter did, however, and so amounted to a modification of the Loan Agreement because Signature and Spielman agreed "to alter a contractual provision or to include additional obligations, while leaving intact the overall nature and obligations of the original agreement." *Schwinder v. Austin Bank of Chicago*, 809 N.E.2d 180, 189, 348 Ill. App. 3d 461, 284 Ill. Dec. 58 (2004).

Wishnia responds that because the Confirmation Letter is only between Spielman and Signature and was executed at a different time than the Loan Agreement, the Confirmation Letter cannot be considered a single contract with the Loan Agreement. *See United Cent. Bank v. Kanan Fashions, Inc.*, No. 10 C 331, 2011 WL 686810, at *5–6 (N.D. Ill. Feb. 18, 2011) (rejecting argument that four loan agreements should be deemed a single contract where they were entered over a period of years, had different purposes, and were between different parties). But here, the Court cannot find the two to constitute separate contracts, where the Confirmation

---

[3] Wishnia argues that Signature had no right to setoff against the IRA under the Loan Agreement because it held the IRA as a custodian/trustee. But the waiver language in the Loan Agreement provides that the Borrowers "waive the benefit of any law that would otherwise restrict or limit Lender . . . in the exercise of its right, which is hereby acknowledged and agreed to, to set-off against the Obligations." Doc. 38-2 § 28(c). Illinois law recognizes the right of parties to contract around statutory provisions unless doing so violates public policy, *see Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1180, 215 Ill. 2d 121, 293 Ill. Dec. 677 (2005), and Wishnia does not provide any support that the parties could not contract away the prohibition against setoff.

Letter indicates that certain aspects of the Loan Agreement did not reach the IRA Spielman transferred to Signature's control. Nor can the Court conclude from the Confirmation Letter that it did not include all parties to the Loan Agreement, where it was addressed to "Mr. Ron Spielman, Sound Solutions et al." Doc. 38-8. Because the Confirmation Letter specifically references the Loan Agreement and its defined terms, and indicates an intent to change certain elements of the Loan Agreement, the Court treats it as a modification of the Loan Agreement instead of as a standalone contract.[4]

      Signature contends that doing so means that, pursuant to the Loan Agreement's terms, all parties to the Loan Agreement needed to sign the Confirmation Letter for it to have legal force. Of the Borrowers, only Spielman signed, differentiating the Confirmation Letter from the numbered amendments to the Loan Agreement. And Spielman did not indicate that he signed on behalf of any of the three companies then also parties to the Loan Agreement. Wishnia argues, however, that Signature waived strict compliance with the modification requirement because it drafted the letter and then accepted the transfer of the IRA from High Tower to Signature. *See Barnes v. Nw. Repossession, LLC*, 210 F. Supp. 3d 954, 964 (N.D. Ill. 2016) ("[U]nder Illinois law, 'a contracting party may waive provisions beneficial to it or waive strict compliance by conduct or actions indicating that strict compliance with a particular provision will not be required.'" (quoting *In re Krueger*, 192 F.3d 733, 738 (7th Cir. 1999))). Because the Court cannot rule out such a possibility, Signature cannot rely on this technical argument for dismissal of Wishnia's breach of contract claim at the pleadings stage.

---

[4] Because the Confirmation Letter requires interpretation of the Loan Agreement, even treating the two separately, the Court would have to read them together to resolve Wishnia's breach of contract claim.

## B. Spielman's Compliance with the Loan Agreement's Material Terms

Signature also argues that Wishnia cannot pursue the breach of contract claim because the Borrowers, including Spielman, had defaulted prior to Signature's alleged breach. "A party cannot sue for breach of contract without alleging and proving that he has himself substantially complied with all the material terms of the agreement," meaning that "a material breach of a contract will excuse the other party's performance." *Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011) (citations omitted) (internal quotation marks omitted). To determine whether a breach is material, the Court considers "whether it is 'so substantial and fundamental as to defeat the objects of the parties in making the agreement, or whether the failure to perform renders performance of the rest of the contract different in substance from the original agreement.'" *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1027, 2012 IL App (1st) 092385, 364 Ill. Dec. 451 (2012) (quoting *Vill. of Fox Lake v. Aetna Cas. & Sur. Co.*, 534 N.E.2d 133, 141, 178 Ill. App. 3d 887, 128 Ill. Dec. 113 (1989)); *Sahadi v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983) ("[T]he determination of 'materiality' is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage.").

Wishnia acknowledges that Signature issued two formal notices of default in January and April 2014. But the FAC does not specify the basis for these notices of default, and the parties do not address whether the defaults amounted to material breaches of the Loan Agreement. Presumably, a notice of default indicates that the defaulting party has materially breached the

10

agreement. But without additional details as to the underlying basis for the default and the surrounding circumstances, the Court cannot make this factual determination at the motion to dismiss stage. *See Sahadi*, 706 F.2d at 196–97 (noting that the issue of materiality "must be resolved with reference to the intent of the parties as evidenced in large part by the full circumstances of the transaction, thus making these issues especially unsuited to resolution by summary judgment"); *Griffin v. U.S. Bank Nat'l Ass'n*, No. 15 CV 6871, 2018 WL 1621024, at *2 (N.D. Ill. Apr. 4, 2018) (refusing to dismiss breach of contract claim at motion to dismiss stage based on plaintiff's default on his loan, noting that the Seventh Circuit has rejected the argument that "any failure by a borrower to perform under the contract precludes a borrower from bringing a breach of contract claim against a lender"); *William Blair & Co. v. FI Liquidation Corp.*, 830 N.E.2d 760, 779, 358 Ill. App. 3d 324, 294 Ill. Dec. 348 (2005) (refusing to find a breach material at summary judgment where the contract did not specify whether the breach was material and no "other conclusive indication [existed] that the parties intended that such a breach would be material").

### C. Signature's Rights upon Default

Finally, Signature argues that Wishnia cannot state a valid breach of contract claim because § 18(d) of the Loan Agreement allowed Signature to disregard the Confirmation Letter upon the occurrence of an Event of Default. Specifically, Signature highlights that, after declaring an Event of Default, § 18(d) allowed Signature to, without notice or demand to Spielman or the other Borrowers, "otherwise modify, amend or change the terms of any promissory note or other agreement, document or instrument . . . executed by a Borrower and delivered to Lender." Doc. 38-2 § 18(d). As such, Signature claims it could take additional collateral, such as Spielman's IRA, and apply it toward the outstanding obligations under the

11

Loan Agreement. Construing all allegations in favor of Wishnia at this stage, the Court questions whether the Confirmation Letter amounts to an agreement "executed by a Borrower and delivered to Lender" and cannot find that § 18(d) clearly allowed Signature to use the IRA to setoff the obligations under the Loan Agreement. Signature's interpretation—that it could take any security and apply it to the outstanding obligations and modify any other agreements upon an Event of Default—would render meaningless its agreement in the Confirmation Letter that it would not treat the IRA as security for any obligations arising under the Loan Agreement or exercise any setoff rights against the IRA. And, pursuant to the rules of contract interpretation, under which the Court is to "give effect to the intent of the parties" as "derived from the language of the document, read as a whole and construed in connection with the circumstances surrounding its execution," the Court "has a duty to harmonize seemingly discordant provisions of a contract to avoid a construction that would render some of those provisions meaningless." *Standlee v. Bostedt*, --- N.E.3d ----, 2019 IL App (2d) 180325, ¶ 55 (2019).

      Signature also contends that, because of his earlier assent to § 18 of the Loan Agreement, Spielman knew that Signature could assert a right to additional collateral upon an Event of Default. But such knowledge would appear to be precisely the reason why Spielman obtained Signature's agreement in the Confirmation Letter not to exercise any setoff rights it may have against Spielman's IRA. Viewed another way, one could argue that Signature's waiver of those rights and agreement that the IRA did not constitute security for the Borrowers' obligations in the Confirmation Letter expressly modified the rights Signature had pursuant to § 18(d) of the

Loan Agreement.[5] Therefore, at this stage, the Court cannot find that the express terms of the Loan Agreement bar the breach of contract claim, and so this claim may proceed to discovery.[6]

## II. Breach of Fiduciary Duty (Count II)

In addition to his breach of contract claim, Wishnia alleges that Signature breached its fiduciary duty to Spielman by using the IRA to setoff the obligations under the Loan Agreement. Under Illinois law, to establish a breach of fiduciary duty, Wishnia must allege that (1) a fiduciary duty existed, (2) Signature breached that duty, and (3) the breach of the duty proximately caused damages. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010). Wishnia alleges that 26 U.S.C. § 408 prohibits IRA custodians from creating a forfeiture of funds to offset debts and that, as the custodian and/or trustee of the IRA, Signature owed Spielman a duty to transfer funds out of the IRA only as Spielman directed and not to misappropriate funds from the account. Signature instead claims that it did not owe Spielman any fiduciary duties.

Signature first claims that § 408 does not prohibit custodians from creating forfeitures, relying on *In re Commissioner of Banks & Real Estate*, 764 N.E.2d 66, 122–23, 327 Ill. App. 3d 441, 261 Ill. Dec. 775 (2001). But in that case, the court only found that § 408(a)(4), which provides that an account meets the qualifications for an IRA if "[t]he interest of an individual in the balance in his account is nonforfeitable," did not apply to the situation before it, in which the court needed to determine whether a cash shortage could be allocated to IRA accounts. *Id.* The

---

[5] For this reason, *USX Credit Corp. v. Lichterman*, 876 F.2d 1283 (7th Cir. 1989), is distinguishable. In *USX*, the court noted that a clause similar to that in § 18(d) remained in force where, among other things, the enforcing party did not waive any obligations in writing. *Id.* at 1286.

[6] The parties also dispute whether Signature properly perfected its security interest in the Spielman IRA. The Court need not address this issue at this time, although it notes that, in § 18(e) of the Loan Agreement, each Borrower agreed that its obligations under the Loan Agreement were unconditional, regardless of the "failure by Lender to take any steps to perfect and maintain its security interest in, or to preserve its rights to, any security or collateral for Borrowers' Obligations." Doc. 38-2 § 18(e)(iii). Nor does the Court need to address Wishnia's argument that § 18(d) is unconscionable.

Illinois Appellate Court did not determine, as Signature appears to argue, that § 408 allows a bank to offset a borrower's defaulted loan debt with his IRA. *See id.* at 123 (citing *Goldblatt v. Fed. Deposit Ins. Corp.*, 105 F.3d 1325, 1329 (9th Cir. 1997), for the proposition that § 408(a)(4) "precludes a bank from offsetting a borrower's defaulted loan debt with the borrower's IRA deposit and it prohibits forfeiture of IRA assets in the criminal context in some cases"). This, then, does not preclude Wishnia's fiduciary duty claim.[7]

Signature also argues that § 408 does not create a fiduciary duty and that Illinois does not impose any additional fiduciary duties to those set forth between a bank and its customer. Even if § 408 does not create a duty, Wishnia's fiduciary duty claim does not solely depend on § 408 as the source of that duty. Signature ignores the TAC's allegations of Signature's role as trustee/custodian of the IRA, *see* Doc. 38 ¶¶ 57–59, claiming instead in reply that Wishnia seeks to amend his complaint in response by relying on such allegations, *see* Doc. 45 at 1–2 (claiming that Wishnia is "grasping, trying post-hoc to find a reason why Signature should be liable" and "[a]ttempting to amend a complaint through a response to a motion to dismiss"). "Under Illinois law an IRA is a 'special deposit' created by an express agreement or other circumstances that impliedly create a trust between the depositor and the Bank." *Masi v. Ford City Bank & Tr. Co.*, 779 F.2d 397, 399 (7th Cir. 1985); *First Nat'l Bank of Blue Island v. Philp's Estate*, 436 N.E.2d 15, 16–17, 106 Ill. App. 3d 360, 62 Ill. Dec. 433 (1982) (finding a custodial IRA created a bailment with "an agreement that the money or chattel is to be returned intact on demand"). In such a trust relationship, which Wishnia alleges existed between Signature and Spielman, the bank owes a fiduciary duty to the depositor. *Masi*, 779 F.2d at 399, 401. While Signature relies on cases indicating that § 408 does not impose any duties on IRA custodians, those cases

---

[7] Despite Signature's representations to the contrary, Wishnia does not attempt to assert a separate claim based solely on § 408(a), instead grounding his claim in the accepted state common law claim for breach of fiduciary duty.

14

addressed custodial IRAs and recognized that "[t]rustees of discretionary accounts may be subject to other obligations that give rise to fiduciary duties." *Hines v. FiServ, Inc.*, No. 8:08-cv-2569-T-30AEP, 2010 WL 1249838, at *2–3 (M.D. Fla. Mar. 25, 2010) (distinguishing custodial IRA at issue with that in *Masi*). Here, Wishnia alleges that Signature treated the Spielman IRA as an inherited IRA, with Spielman filling out a traditional IRA account application. Nothing in the FAC or the attached documents indicates that Signature disclaimed any fiduciary duty, nor are any additional details of the trust agreement before the Court at this time. *Cf. Tucker v. Soy Capital Bank & Tr. Co.*, 974 N.E.2d 820, 829, 2012 IL App (1st) 103303, 363 Ill. Dec. 23 (2012) (noting that contract between bank and customer excluded bank from having specific duties and that courts do not recognize additional duties to those in a contract between such parties); *Hines*, 2010 WL 1249838, at *2 (noting that the IRA contract expressly disclaimed any fiduciary duty). But any failure to include these additional details does not warrant dismissal. Although discovery may prove otherwise, Wishnia has sufficiently alleged a fiduciary duty based on Signature's role as the trustee or custodian of Spielman's IRA. *See Masi*, 779 F.2d at 399 (finding that bank breached its fiduciary duties under an IRA agreement by setting off depositor's obligations under a loan with funds in the IRA); *Cagan v. W. Suburban Bank*, No. 90 C 5582, 1992 WL 80966, at *9 (N.D. Ill. Apr. 15, 1992) (acknowledging that trust instruments provide contours of bank's duties as trustee but finding that, at the motion to dismiss stage, plaintiff's allegations of the bank's role as trustee of IRAs sufficiently established a fiduciary duty).

### III. Conversion (Count III)

Conversion "is the unauthorized assumption of the right to possession or ownership of personal property belonging to another." *Cordes & Co. v. Mitchell Cos.*, 605 F. Supp. 2d 1015,

1024 (N.D. Ill. 2009). To state a claim for conversion under Illinois law, Wishnia must allege (1) Spielman had a right to the property at issue; (2) Spielman had an "absolute and unconditional" right to the immediate possession of the property; (3) Spielman made a demand for possession; and (4) Signature wrongfully and without authorization assumed control, dominion, or ownership over the property. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016). Signature repeats its argument that § 18(d) of the Loan Agreement authorized Signature to apply any collateral, including the IRA, to the Borrowers' outstanding obligations, meaning that Spielman did not have an absolute and unconditional right to possession of the funds in the IRA or that Signature acted without authorization in assuming control of these funds. But, as the Court noted in connection with the breach of contract claim, it cannot at this stage conclude that § 18(d) gave Signature such a right in light of the language of the Confirmation Letter. Because Wishnia has adequately alleged the elements of a conversion claim, the Court allows it to proceed to discovery.

### IV.     Promissory Estoppel (Count IV)

To state a claim for promissory estoppel, Wishnia must allege (1) Signature made an unambiguous promise to Spielman, (2) Spielman reasonably and justifiably relied on the promise, (3) Spielman's reliance was expected and foreseeable by Signature, and (4) Spielman relied on the promise to his detriment. *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004, 141 Ill. 2d 281, 152 Ill. Dec. 308 (1990). Signature challenges Wishnia's promissory estoppel claim based on a similar argument, that Spielman's reliance on Signature's promise in the Confirmation Letter not to exercise its setoff rights against the IRA was not reasonably foreseeable in light of the default provisions of the Loan Agreement.[8] Specifically, Signature

---

[8] Signature does not argue that this claim fails because an express agreement, in this case the Loan Agreement and Confirmation Letter, addresses the issue. *See Matthews v. Chicago Transit Auth.*, 51

16

argues that, given the clear terms of the Loan Agreement, Signature's agreement to waive its setoff rights was conditioned on the Borrowers' compliance with the Loan Agreement so as not to cause an Event of Default. But, aside from relying on § 18(d), Signature does not point to any allegations of the TAC that conclusively establish that Signature could not expect Spielman to rely on Signature's waiver of setoff rights. And, as already discussed, the Court cannot find at this stage that the Confirmation Letter did not modify § 18(d) or was conditional on avoidance of a default. *Cf. Thacker v. Menard, Inc.*, 105 F.3d 382, 385 (7th Cir. 1997) (noting that, in light of the written terms of the parties' agreement, plaintiffs "could not reasonably expect to rely on oral representations" that contradicted those terms). The TAC sufficiently alleges that Signature made the promises in the Confirmation Letter to induce Spielman to transfer the IRA to Signature with the knowledge that Spielman would only transfer the IRA if Signature agreed to the conditions in the Confirmation Letter. The parties can further address the foreseeability of Spielman's reliance in discovery.

Alternatively, Signature contends that the Court should dismiss this claim because enforcing its alleged waiver of setoff rights would reward Spielman. Signature relies on promissory estoppel's equitable purpose to avoid injustice as support. *See Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 651 (7th Cir. 2014) ("Under Illinois law, promissory estoppel is a theory that allow relief where a promise has been made that was relied upon by the promisee to his detriment such that it would be a fraud or injustice not to enforce the promise."). But Signature offers no suggestion that considerations of injustice factor into whether Wishnia has properly pleaded his claim. And the arguments concerning injustice go both ways. Wishnia, on behalf of Spielman, maintains that Signature committed an injustice by refusing to honor the

---

N.E.3d 753, 779, 2016 IL 117638, 402 Ill. Dec. 1 (2016) ("Application of promissory estoppel is proper only in the absence of an express agreement."). The Court therefore does not address this issue or whether Wishnia has properly pleaded the claim in the alternative to his breach of contract claim.

Confirmation Letter's commitments. Signature contends that Wishnia, through the assignment, should not benefit from Spielman and his co-Borrowers' defaults, which left Signature with a loss. Signature's argument appears to be an attempt to raise the affirmative defense of unclean hands. *See Long v. Kemper Life Ins. Co.*, 553 N.E.2d 439, 440–41, 196 Ill. App. 3d 216, 142 Ill. Dec. 925 (1990) (explaining that the affirmative defense of unclean hands "precludes a party from taking advantage of his own wrong" and "applies if the party seeking equitable relief is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought if that misconduct is connected with the transaction at issue"). At the motion to dismiss stage, the Court refuses to engage in the type of factfinding and weighing that consideration of this defense would require. This does not foreclose Signature from raising the argument after discovery. At this time, however, the Court finds that Wishnia has sufficiently alleged a claim for promissory estoppel.

## CONCLUSION

For the foregoing reasons, the Court denies Signature Bank's motion to dismiss [40].

Dated: April 16, 2019

_____
SARA L. ELLIS
United States District Judge